WEST, Appellant, v. BANK OF CARUTHERS-VILLE, Respondent.

St. Louis Court of Appeals, February 21, 1905.

1. **PRACTICE: Jury Trial: Waiver.**  The appellate court will not consider an assignment of error on the part of the trial court in failing to submit certain issues to the jury, where the record fails to show that a jury was demanded.

2. **REFERENCE: Report of Referee: Judgment.**  In a case in which a compulsory reference could be ordered by the court, the court has power to act upon the referee's report of the evidence, without a retrial of the issues, and, upon a hearing of the exceptions to the report, may enter judgment contrary to the one rendered by the referee.

3. **WEIGHT OF EVIDENCE.**  In an action by a depositor against a bank for an amount alleged to be due, the evidence is examined and held sufficient to support a finding in favor of the defendant.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*Ely & Kelso* for appellant.

(1)   We are of the opinion that upon the record in this case as already presented that the report of the referee was in the nature of a verdict of a jury.  And

if the report has been confirmed by the court, then judgment could have been rendered thereon in the same manner and with like effect as upon a special verdict. But we do not believe that a proper interpretation of section 715, Revised Statutes 1899, will give the trial court the right, in a case like this one, to sustain the exceptions and render judgment contrary to the report of the referee. And we believe that the court will agree with us that the doctrine announced in the case of Hardware Co. v. Wolter, 91 Mo. 485, affords no authority for the action of the trial court in this cause. We are of the opinion that this statute means that the court may enter judgment on the facts found by the referee, but it furnishes no authority in a case like this to ignore the report of the referee, render a judgment against the finding of the referee without making any finding and without a hearing of the matter. R. S. 1899, sec. 715; 62 Mo. 202; 73 Mo. 187. (2) We are of the opinion that the court erred in refusing plaintiff the right of a jury trial in this cause. The report of the referee found that the question in dispute was narrowed down to whether or not two vouchers should be charged against plaintiff's account. And plaintiff requested a jury to pass on the question as soon as the court indicated he would sustain the exceptions. Plaintiff had a right to waive any further claims and submit his case to a jury on the two vouchers. Hardware Co. v. Wolter, 91 Mo. 480, 3 S. W. 865.

*Faris & Oliver* for respondent.

(1) The trial court upon exceptions filed by defendant to the report of the referee recommending a finding in favor of plaintiff, may sustain such exceptions and enter up judgment for defendant, if the evidence taken before the referee warrants such finding by the court. Tobacco Co. v. Walker, 123 Mo. 671, 27 S. W. 639; State ex rel. v. Hurlstone, 92 Mo. 327, 5 S. W.

38; Small v. Hatch, 151 Mo. 306, 52 S. W. 190; Williams v. Railroad, 153 Mo. 495, 54 S. W. 689; Utley v. Hill, 155 Mo. 276, 55 S. W. 1091; Bond v. Finley, 74 Mo. App. 25; Cohill v. McCornish, 74 Mo. App. 612; Raines v. Lumpee, 80 Mo. App. 203; Roth v. Wire Co., 94 Mo. App. 267, 68 S. W. 594.   (2)  In the case of Wentzville Tobacco Co. v. Walker, supra, upon the question of whether the trial court may set aside the recommendation of the referee, and render final judgment from the evidence preserved, Judge BARCLAY says:  "This should now be taken as settled law," in cases where under the law the facts and the issues made by the pleadings, the trial court might lawfully direct a compulsory reference.   This case is conceded to be, and clearly is, such a case.   It involved a "long account"—more than 300 items.   Welsh v. Dorragh, 52 N. Y. 590; Smith v. Haley, 41 Mo. App. 613; R. S. 1899, sec. 698; Bank v. Owen, 101 Mo. 558, 14 S. W. 710; Johnson v. Blell, 61 Mo. App. 37.   (3)  On the point raised by appellant that "the court erred in refusing plantiff the right of a jury trial in this cause," respondent suggests and contends:   (a) That there is no showing or entry in the record that appellant requested a jury at any stage of the proceedings below. While, in the ordinary case at law, this fact, under section 693, Revised Statutes 1899, would be against rather than in favor of respondent's position, it becomes pertinent in the light of what is further suggested below herein.  Drainage Dist. v. Campbell, 154 Mo. 151.   (b) That the record shows that appellant was present, or represented by his counsel, where this reference was had, and that he made no objection, nor took any exceptions to such reference.   Can he now be heard to object?   Callahan v. Shotwell, 60 Mo. 398; Young v. Powell, 87 Mo. 128; Vining v. Ins. Co., 89 Mo. App. 311; Sheppard v. Bank, 15 Mo. 144; Edwardson v. Garnhart, 56 Mo. 81; Ice Co. v. Tamm, 138 Mo. 385, 39 S. W. 791.   (4)  This court will assume, in the ab-

sence of this evidence and these showings, that the trial court decided this case correctly, from all the evidence before it. McCullough v. DeWitt, 163 Mo. 306, 63 S. W. 694; Doherty v. Noble, 138 Mo. 32, 39 S. W. 458; Deering v. Hannah, 93 Mo. App. 618, 67 S. W. 714; Ely v. Coontz, 167 Mo. 371, 67 S. W. 299.

GOODE, J.—As this action was instituted it was for $5,107.18, alleged to be due the plaintiff as the difference between the aggregate of sums of money he had deposited in the defendant bank and the sums he had withdrawn. Plaintiff began business with the bank July 11, 1900, and closed his account June 15, 1901. During this time his deposits amounted to $41,099.25, and he admitted checking out at various times $35,992.11. The answer admitted plaintiff had deposited $39,730.84, but alleged the entire sum had been paid out on orders and checks drawn by the plaintiff. The litigation, therefore, involved very numerous transactions and the examination of the books of the bank and the pass books and vouchers of the plaintiff for nearly a year. The circuit judge referred the case to a referee, whether by consent or on his own motion, is not disclosed. At all events, the case was one permitting a compulsory reference. In his report the referee found all the various items arising from the business transacted between the parties except two, against the plaintiff. One of these was a debit against plantiff on the books of the bank December 10, 1900, for $1,000; the other was a debit of $100 dated November 17, 1900. These two items the referee found to have been charged to the plaintiff by mistake and recommended a judgment in his favor for the amount of them. Exceptions were filed by the bank to the referee's report and sustained by the court. With the report of the referee a complete transcript of the evidence taken before him was filed, and on this evidence

the court entered judgment for the defendant.    The
plaintiff appealed.

1. It is urged that the court, after sustaining the
defendant's exception to the report of the referee,
should have granted plaintiff a trial by jury of the is-
sue touching the two items found by the referee in his
favor.  Suffice to say as to this positon, that the record
fails to show a jury was demanded, and on the contrary,
does show the case was submitted to the court.

2.  Error is assigned because the court rendered
judgment on the transcript of the evidence taken be-
fore the referee, instead of retrying the cause after the
defendant's exceptions were sustained.  As this was a
case in which a compulsory reference could have been
ordered by the court, the court had power to act on the
referee's report of the evidence and enter judgment
contrary to the one rendered by the referee.  [Wentz-
ville Tobacco Co. v. Walker, 123 Mo. 662, 671, 27 S. W.
639; Caruth v. Wolter, 91 Mo. 484; 3 S. W. 865; State
ex rel. v. Hurlstone, 92 Mo. 397, 5 S. W. 38.]

3. The evidence is all before us and it is insisted
the judgment below was not justified and that we ought
to enter judgment for the plaintiff on the merits.  An
attentive perusal of the testimony has failed to yield a
conviction in plaintiff's favor so positive that we would
feel justified in changing the result.  A brief epitome
of the evidence bearing on the two items will disclose
why we refrain from doing so.  As has been stated, the
plaintiff's account with the bank extended over nearly
a year, involving numerous transactions and considera-
ble sums of money.  The plaintiff was in the mercan-
tile business at the town of Pascola, some fifteen miles
from Caruthersville.  During all his dealings with the
bank he kept a pass book.  He had three pass books in
that period, a new one being furnished when he claimed
to have mislaid the one previously used. The pass book
in use was balanced regularly and returned to him with
all vouchers and checks.  His book was balanced Janu-

ary 1, 1901, and the two items in dispute on this appeal —that is, those of the dates of December 10, 1900, and November 17, 1900—were included in that statement of his account, as the last prior statement was rendered October 24, 1900. West admits he made no complaint about his account as shown on his balanced pass book, until June 10, 1901, more than six months afterwards. He gives no explanation of why he was silent, and his silence is the more significant in that he testified a man named Friant and he had worked over the book and Friant said that he (West) "was being hogged." Moreover, it appears that West's account with the bank was overdrawn frequently, he was notified to make the overdrafts good and did so several times after the alleged shortage, without protesting that his account was short $1,000 or $1,100. He complained in June or July, 1901, after he had discontinued business with the bank and sold out his mercantile establishment. He sold this establishment to a man by the name of Stephens, June 20, 1901. About that time one of West's checks on the Bank of Caruthersville went to protest and he told Stephens about it, saying he knew he had no money in the bank at the time, but did not think Mr. Talley (the cashier) would turn him down or protest his check. The debit of $1,000 probably arose in this way; West was in the habit of going to the bank every month and getting about that sum to pay the wages due Friant's employees. Friant did business with West at Pascola and West paid his hands on the tenth of the month. That is to say, West advanced the money to Fraint and borrowed it from the bank to make the advance. He usually repaid the bank in a day or two, and for this reason the loan was carried not as a bill receivable on the books of the bank, but as a cash item. That is, as the loan was only to run for a few days, it was treated as cash. Sometimes West gave a receipt for it and sometimes a note; but in either case it was treated as cash in the expectation that it would be paid in so short a time that

it was useless to charge it among the bills receivable. West swore he did not get a loan December 10, 1900 and did not know anything about a loan of that date until he quit business with the bank. When his pass book was balanced in 1901, he was overdrawn $100, but says the fact that this $1,000 had been unjustly charged to him in December, 1900, did not attract his attention. His reason for knowing he gave no note and made no loan on December 10, 1900, was that he got some money on that day from Hayti. The impression left on our minds is that this $1,000 charge was correct. Talley, the cashier, swore positively that though West complained in June, 1901, after he had quit business with the bank, of an error in his account, he said nothing about this particular item. When Talley testified he no longer had any interest in the bank.

The debit for $100 is evidenced by a receipt signed by West, dated November 17, 1900, with a notation on the receipt: "Sent out by Forbes." Forbes was a conductor on a railroad which ran from Caruthersville to Pascola and occasionally West had him draw money out of the Bank of Caruthersville and bring it to West's store. The contention in regard to this item is that West failed to meet Forbes at Pascola the day the latter brought the money called for by the item; so Forbes took the money back to Caruthersville and returned it to the bank. It is not denied that such an incident occurred once; but the bank insists that the returned loan was not the same loan obtained November 17, 1900, but was money borrowed at another time; and that the debit slip for that money was destroyed without the loan being put on the books against West. The evidence in regard to this item leaves a doubt in our minds as to what the truth is; hence we do not feel justified in interfering with the finding below.

The judgment is affirmed.    All concur.